# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:21-CV-00469-MR

| | |
|---|---|
| BERNARD SCHULZ, **)** | |
| **)** | |
| Plaintiff, **)** | |
| **)** | |
| vs. **)** | **ORDER** |
| **)** | |
| JOHN DOES 1-3, **)** | |
| **)** | |
| Defendants. **)** | |
| _____ **)** | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, [Doc. 1], filed under 42 U.S.C. § 1983, <u>see</u> 28 U.S.C. §§ 1915(e) and 1915A, Plaintiff's motions, [Docs. 9-12], and Plaintiff's recent filing [Doc. 14]. Plaintiff paid the filing fee in this matter before his two applications to proceed in forma pauperis, [Docs. 2, 7], were addressed. [9/30/21 Docket Entry].

## I. BACKGROUND

Pro se Plaintiff Bernard Schulz ("Plaintiff") is currently housed at Broughton Hospital in Morganton, North Carolina.[1] He filed this action on

---

[1] Broughton Hospital is a psychiatric hospital administered by the N.C. Department of Health and Human Services Division of Mental Health, Developmental Disabilities and Substance Abuse Services. It appears from one of Plaintiff's motions that, after he was transferred to a "Raleigh prison for forensic evaluation," he was deemed incompetent to stand trial and then transferred to Broughton, where he will allegedly remain for two years before being reevaluated. [Doc. 12-1 at 3]. For the sake of initial review, the Court

September 7, 2021, pursuant to 42 U.S.C. § 1983, making claims based on the alleged failure to protect him from an assault by other inmates and related gross negligence, the delay in medical care following that assault and an earlier assault, and the use of excessive force in applying restraints, all while Plaintiff was incarcerated at the Mecklenburg County Jail (the "Jail") in Charlotte, North Carolina. [Doc. 1]. Plaintiff lists as Defendants an undetermined number of unidentified guards at the Jail who were involved in the alleged conduct. [See id. at 1-2]. Plaintiff does not state the capacities in which he purports to sue these Defendants.

Plaintiff's alleges the following. On January 7, 2021, at approximately 2:00 a.m., Plaintiff was assaulted in his cell by other inmates. After that assault, Plaintiff asked not to be placed back in the same cell as the inmates who assaulted him. His request was ignored, and Plaintiff was returned to the same cell with at least some of the same inmates. At approximately 5:30 a.m. the same day, Plaintiff was again assaulted by multiple inmates, including someone named Amigo, "for over half a minute." After the second assault, Plaintiff was restrained with handcuffs that were applied too tightly and his wrist was dislocated.

---

construes these allegations to mean that Plaintiff is a pretrial detainee.

There was delay in medical treatment after these two assaults. As for the first assault, Plaintiff alleges he waited over 30 minutes for medical care. As for the second assault, Plaintiff alleges that he waited over an hour to an hour and a half for prison officials to transport him for medical care. [Id. at 4, 7].

Plaintiff made complaints of sexual assault and "reported threat, and danger, of harm" to the Jail Kiosk in the days and weeks prior to the assaults against "mainly the same individuals who ended up eventually assaulting Plaintiff." [Doc. 1 at 7]. Plaintiff also makes vague reference to "inhumane living conditions [and] unsanitary values," that caused illness to Plaintiff.[2] [Id. at 5, 7].

For injuries, Plaintiff claims that he suffered a "broken nose, dislocated wrist, lacerated back, impairment to vision, PTSD, and other behavioral fears." [Id. at 4].

For relief, Plaintiff seeks monetary damages. [Id.].

## II.  STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the

---

[2] Plaintiff also makes a series of rambling and confusing allegations that seem to relate to other lawsuits he has brought in state court and not to the instant case. [See Doc. 1 at 7, 9]. The Court, therefore, declines to further address these claims.

grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III.    DISCUSSION

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

4

## A. Excessive Force and Failure to Protect

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396).

"A failure-to-protect claim brought by a pretrial detainee constitutes a due process claim under the Fourteenth Amendment to the United States Constitution." McFadden v. Butler, No. TDC-16-0437, 2018 WL 1394021, at *4 (D. Md. Mar. 19, 2018) (citing Smith v. Sangamon Cty. Sheriff's Dep't, 715 F.3d 188, 191 (7th Cir. 2013)). "Due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to the convicted prisoner." Id. (citing Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citations omitted)). "Thus, the standards for a Fourteenth

Amendment failure-to-protect claim are the same as those for a comparable claim brought by a convicted prisoner under the Eighth Amendment." Id. (citations omitted). To show deliberate indifference under the Eighth Amendment, a plaintiff must allege that the prison official had actual knowledge of an excessive risk to the plaintiff's safety. Danser v. Stansberry, No. 13-1828, 2014 WL 2978541, at *5 (4th Cir. Sept. 12, 2014). In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Further, the deprivation alleged must be, objectively, sufficiently serious." Id. at 235-36 (citation and internal quotation marks omitted); see Brown v. N.C. Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010) ("[A] prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions.") (quoting Odom v. S.C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003))).

Taking Plaintiff's allegations as true for the purposes of this initial review and drawing all reasonable inferences in his favor, Plaintiff states a Fourteenth Amendment claim against the Doe Defendant guard(s) who, on January 7, 2021, returned Plaintiff to the same cell with the inmates who assaulted him earlier that morning, and against the Doe Defendant guard

who caused Plaintiff's dislocated wrist through the application of restraints.[3]

## B.    Medical Care

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment.[4]  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To state a claim under the Eighth Amendment, a

---

[3] Because these claims have survived initial review, the Court declines to specifically address Plaintiff's claim for gross negligence and allows it to proceed at this early stage of the proceedings.

[4] Because (the Court infers that) Plaintiff was a pretrial detainee at the relevant times, his deliberate indifference claims are properly brought under the Fourteenth Amendment, rather than the Eighth Amendment.  See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983); see also Martin v. Gentile, 849 F.2d 863 (4th Cir. 1988) (applying the Fourteenth Amendment to arrestee's deliberate indifference claims).  However, the Fourth Circuit has long applied the Eighth Amendment deliberate indifference standard to pretrial detainees' deliberate indifference claims.  See e.g., Young v. City of Mt. Rainer, 238 F.3d 567, 575 (4th Cir. 2001); Martin, 849 F.2d at 863.  In Kingsley v. Hendrickson, the United States Supreme Court held that, to state an excessive force claim, a pretrial detainee must only show that the force "purposefully and knowingly used against him was objectively unreasonable" because, although prisoners may not be punished cruelly or unusually, pretrial detainees may not be punished at all.  576 U.S. 389 (2015).  Some circuits have held, in light of Kingsley, that an objective reasonableness standard should apply in custodial contexts beyond excessive force.  See e.g., Hardeman v. Curran, 933 F.3d 816 (7th Cir. 2019) (extending the objective standard to conditions of confinement cases): Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017) (same); Castro v. City of Los Angeles, 833 F.3d 1060, 1069-70 (9th Cir. 2016) (en banc) (extending the objective reasonableness standard to failure to protect claims).  The Fourth Circuit has not yet addressed this question.  See e.g. Duff v. Potter, 665 Fed. App'x 242, 244-45 (4th Cir. 2016) (applying the Kingsley standard to a detainee's excessive force claim but declining to disturb the district court's ruling on plaintiff's claim of deliberate indifference to a serious medical need for procedural reasons).  The Court will apply the deliberate indifference standard in this case, as the relevant Fourth Circuit case law has not been overruled and the Fourth Circuit has not expressed any intention to do so.  See e.g., Shover v. Chestnut, 798 Fed. App'x 760, 761-62 (4th Cir. 2020) (applying the deliberate indifference standard to a pretrial detainee's medical claim without discussing Kingsley).

plaintiff must show a "deliberate indifference to serious medical needs" of the inmate.  Id.  "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care."  Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted).  "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Plaintiff here alleges that there were delays of approximately 30 minutes and one hour and 30 minutes, respectively, in his receiving medical care after he was assaulted.  These short delays do not constitute deliberate indifference.  A delay of 30 minutes where Plaintiff alleges no actual injury following the first assault is wholly inconsequential.  As for the delay after the second assault, Plaintiff alleges that he had to wait to be transported for medical care, presumably to an outside hospital.  Plaintiff's alleged injuries, through certainly not insignificant, were not so significant as to require immediate medical attention, particularly where Plaintiff was transported for outside medical care.  As such, Plaintiff has failed to state a claim for relief

8

based on any denial or delay in medical care and the Court will dismiss this claim on initial review.

## IV.    PLAINTIFF'S MOTIONS AND RECENT FILING

Also pending are several motions filed by Plaintiff.  [Docs. 9-12, 15]. Plaintiff asks for (1) a "court order subpoena to have an injunction on Mecklenburg County Jail to divulge all personel involved in said altercation, in order to notify parties of pending lawsuit," [Doc. 9]; (2) video evidence of "Mecklenburg County assaults" and "Union County assaults;" and (3) Mecklenburg and Union County Jails to disclose Plaintiff's "kiosk report record," [Doc. 15 at 1, 3].  The Court will deny these motions.  Discovery requests should not be filed with the Court.  Discovery materials should only be exchanged between the parties.  All future discovery requests must be served on the opposing party, not with the Court. Because Plaintiff seeks information regarding the identity of Doe Defendants who are necessarily not yet identified, he may seek information through subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure.  Engaging the Court at this stage of the proceedings, without having properly attempted to obtain these materials, is inappropriate and wasteful of judicial resources.  Moreover, other than Plaintiff's attempts to identify the Doe Defendants, Plaintiff's discovery requests are premature.  Plaintiff should not attempt to conduct

discovery until after the Court enters the Pretrial Order and Case Management Plan (PTOCMP) in this case. The Court will instruct the Clerk to mail Plaintiff a blank Subpoena form.

Plaintiff has also filed a motion "to add Mecklenburg county jail address" in this case "in order to have address to send summons, and subpoenas, when necessary." [Doc. 10]. This motion will be denied. The address of the Mecklenburg County Jail does not need to appear in the docket in this matter to be used for service.

Plaintiff also moves "to incorporate more defendants: Union county jail, and 1-4 Does of said assault claims of Union County, complaint." [Doc. 11]. This motion appears to seek to add Defendants to the instant action who are wholly unrelated to the subject of the instant Complaint. The Court will deny this motion and admonishes Plaintiff that he may not sue multiple defendants in a single action where the claims against them are unrelated.

Plaintiff also moves "to add submission of material" in this case "as evidence, in order to further validate claims." [Doc. 12]. With this motion, Plaintiff submits over three typed-written pages recounting events that, again, seem wholly unrelated to the instant action. The Court will deny this motion. Finally, Plaintiff purports to move for summary judgment "[a]fter review of all documentation, and kiosk report." [Doc. 15 at 2]. This motion

10

is denied.  It is wholly premature and inappropriate at this stage of the proceedings.

Plaintiff has also filed some miscellaneous documents in which Plaintiff advises the Court of his attempts to identify Defendants, asks the Court for general guidance on prosecuting his case, and randomly includes several half-completed pages from a § 1983 Complaint form.  [Doc. 14].  The court will strike this document.  It fails, in many respects, to adhere the Order of Instructions [Doc. 3] mailed to Plaintiff on September 8, 2021, and the Court declines to address it further and will strike it as improper.  [Id. at ¶¶ 4-5, 7-8].

**Plaintiff is strongly encouraged to read the Order of Instructions and to familiarize himself with the Federal Rules of Civil Procedure and the Local Rules of this Court before filing any more pleadings or other documents with this Court.  Future failures by Plaintiff to abide by the Order of Instructions, including but not limited to filing needless and improper motion and other documents with the Court, may result in his filings being stricken and/or the summary denial of relief sought therein**.

## V.    CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Fourteenth Amendment claims against the Doe Defendant guard(s) who are alleged to be responsible for failing to protect Plaintiff from assault by other inmates and for applying restraints on Plaintiff causing dislocation of his wrist survive initial review.  Plaintiff's claim based on the delay in medical care following the assaults is dismissed for failure to state a claim for relief.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's claims based on failure to protect, gross negligence, and use of excessive survive initial review in accordance with this Order.  Plaintiff's claim based on the denial of medical care fails initial review and is **DISMISSED**.

**IT IS FURTHERED ORDERED** that Plaintiff's motions [Docs. 9-12] are **DENIED** in accordance with the terms of this Order and Plaintiff's filing [Doc. 14] is **STRICKEN** from the record in this matter.

The Clerk is instructed to mail Plaintiff a blank Subpoena to Produce Documents, Information, or Objects form.

The Clerk of Court is also instructed to mail four (4) blank summonses to Plaintiff to fill out and identify the Doe Defendants, and then return the summonses to the Court.  Plaintiff is required to provide the necessary

12

information for the U.S. Marshal to effectuate service on Defendants.  As the

Court receives the summonses from Plaintiff, the Clerk shall direct the U.S.

Marshal to effectuate service upon Defendants.

**IT IS SO ORDERED**.

Signed: October 27, 2021

Martin Reidinger
Chief United States District Judge